### RESIDENTIAL LISTING CONTRACT Exclusive Right to Sell



1 **THIS AGREEMENT IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD,**
2 **SELLER IS ADVISED TO SEEK THE ADVICE OF COMPETENT LEGAL COUNSEL.**
3
4 This Agreement is an exclusive right to sell listing and Broker is granted the absolute, sole, and exclusive
5 right to market and sell the Property.
6
7 **PARTIES:**
8 Seller(s) <u>Moonlight Basin Ranch, LP</u>
9 (collectively and individually referred to herein as "Seller").
10 Listing Firm/Broker <u>Montana Real Estate, LLC</u>
11 ("Broker").
12
13 **LENGTH OF LISTING:** This Agreement begins on (date) <u>January 1, 2009</u> and expires at midnight
14 on (date) <u>Until Sellout</u> or THROUGH December 31, 2013.
15
16 **PRICE & TERMS:** Listing Price _____ ($ <u>*see Addendum</u> )
17 Terms <u>Cash at Closing.</u>
18
19
20 **PROPERTY:** Legal Description
21 <u>As shown on Warranty Deed.</u>
22
23
24
25 Commonly known as _____ <u>*see Addendum</u>
26 City of <u>Big Sky</u>, County of <u>Madison</u>, ST <u>MT</u>, Zip <u>59716</u>
27 (the "Property").
28
29 **FIXTURES:** The following items are to be left upon the premises as part of the Property sold: all permanently
30 installed fixtures and fittings that are attached to the Property such as electrical, plumbing, and heating
31 fixtures, wood, pellet, or gas stoves, built-in appliances, screens, storm doors, storm windows, curtain rods
32 and hardware, attached floor coverings, T.V. antenna, satellite dish, hot tub, air cooler or conditioner, garage
33 door openers and controls, fireplace inserts, mailbox, trees, shrubs, and perennials attached to the Property,
34 attached buildings or structures, and all permanently installed fixtures unless otherwise noted below:
35 <u>n/a</u>
36
37
38
39 The following personal property is also included as part of the Property offered for sale:
40 <u>n/a</u>
41
42
43
44
45 **PERSONAL PROPERTY:** The following personal property is leased/rented: ☐ water softener ☐ water
46 conditioner ☐ propane tank ☐ satellite dish ☐ satellite control ☐ alarm system ☐ other <u>n/a</u>
47
48
49 **CONDITION AND STATUS OF PROPERTY:** TO THE BEST OF SELLER'S KNOWLEDGE, the following
50 items are in good repair and working condition and Seller is unaware of anything wrong with appliance(s),
51 foundation, roof, siding, wiring, drainage, heating, plumbing, sanitation, or water systems except:
52 <u>n/a</u>
53
54
55
56 In conjunction with the execution of this Agreement Seller agrees to execute a statement disclosing all
57 adverse material facts affecting the Property.

©Montana Association of REALTORS®, May 2008     Standard Listing Page 1 of 5
                                                                                Seller's Initials

MONTANA REAL ESTATE COMPANY PO BOX 161110, BIG SKY, MT 59716     Phone: (406) 995 - 3993   Fax: (406) 995 - 3244    Moonlight basi
Leesa P. Anderson         Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipform.com

**RESIDENTIAL LISTING CONTRACT Exclusive Right to Sell**

58 **STATUTORY DISCLOSURES:**
59
60     **METHAMPHETAMINE:** If the Property is inhabitable real property, the Seller represents to the best of
61     Seller's knowledge that the Property ☐ has ☒ has not been used as a clandestine Methamphetamine
62     drug lab. If the Property has been used as a clandestine Methamphetamine drug lab Seller agrees to
63     execute and provide any documents or other information that may be required under Montana law
64     concerning the use of the Property as a clandestine Methamphetamine drug lab.
65
66     **RADON:** If the Property is inhabitable real property as defined in the Montana Radon Control Act,
67     Seller represents that to the best of Seller's knowledge the Property ☐ has ☒ has not been tested for
68     radon gas and/or radon progeny and the Property ☐ has ☒ has not received mitigation or treatment
69     for the same. If the Property has been tested for radon gas and/or radon progeny, Seller agrees to
70     provide, as available, test results to Broker along with any evidence of mitigation or treatment.
71
72     **LEAD BASED PAINT:** If a residential dwelling exists on the Property and was built before the year
73     1978, Seller ☐ has ☒ has no knowledge of lead-based paint and/or lead-based paint hazards on the
74     Property. If Seller has knowledge of lead-based paint and/or lead-based paint hazards on the Property
75     Seller agrees to provide all pertinent reports and records concerning that knowledge. Seller
76     acknowledges that the Broker has advised the Seller of Seller's obligation to make lead-based paint
77     disclosures and Broker's obligation to ensure that the Seller satisfies this obligation.
78
79     **MOLD:** If the Property is inhabitable real property as defined in the Montana Mold Disclosure Act, the
80     Seller represents to the best of Seller's knowledge that the Property ☐ has ☒ has not been tested
81     for mold and that the Property ☐ has ☒ has not received mitigation or treatment for mold. If the
82     Property has been tested for mold or has received mitigation or treatment for mold Seller agrees to
83     provide any documents or other information that may be required under Montana law concerning such
84     testing, treatment or mitigation.
85
86 **SELLER REPRESENTATIONS:** Seller represents as follows:
87
88     a.    Seller is the owner of and has the unrestricted right to sell the Property
89     b.    Title to the Property is marketable and is free and clear of all encumbrances, except zoning
90          ordinances, building and use restrictions, reservations in federal patents, easements of record,
91          special improvement or rural improvement district assessments, real property taxes and those
92          liens and encumbrances which are to be discharged upon a sale of the Property.
93     c.    Seller will fully cooperate with Broker in regard to providing information concerning the Property
94          and that all information given by Seller is or shall be true, accurate and complete.
95     d.    Seller will perform any act and sign any document reasonably necessary to comply with
96          Section 1445 of the Internal Revenue Code and the Foreign Investor Real Property Tax
97          Act of 1980. Seller acknowledges and agrees that in the event Seller does not do so, a
98          Buyer or closing agent may be required to withhold ten percent (10%) of the purchase
99          price and submit this amount to the Internal Revenue Service, pursuant to Section 1445
100         of the Internal Revenue Code.
101    e.    In addition to those set forth above, Seller agrees to cooperate with the making of any further
102         disclosures that may be required under state or federal law.

©Montana Association of REALTORS®, May 2008          Standard Listing Page 2 of 5      Seller's Initials

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipform.com      Moonlight basi

RESIDENTIAL LISTING CONTRACT Exclusive Right to Sell

103 **SPECIAL PROVISIONS:**
104 ** See lines 124 and 129
105 1. Cowboy heaven Luxury Suite Building 3 Suite A; Alpine Meadows Chalet #74 and
106 Alpine Meadows Luxury Suite Building 6 Suites A,B,C,& D: 6% commission.
107
108 2. Strawberry Ridge Lots 1-4 and 160 acre Reserve Ranches 1-22: 7% commission.
109
110
111
112
113
114
115
116
117
118
119
120
121
122 **COMMISSION:** Broker is employed to find a buyer ready and willing to acquire the Property at the price and
123 terms stated above or at such other price and terms as Seller accepts. Broker is authorized to accept a
124 deposit on the purchase price. Seller agrees to pay Broker in cash a commission equal to   **   %
125 based upon the sales price, or a flat fee of $ n/a          , if Seller enters into a written agreement
126 for the sale of the Property during the term of this Agreement. The commission shall be payable at closing.
127 If the Seller breaches the agreement to sell and purchase or if Seller refuses to accept an offer which meets
128 or exceeds the listed terms Seller agrees to pay Broker, immediately and in cash, a commission equal to
129   **   % based on the listed price. In the event of multiple offers which equal or exceed the listed
130 price/terms, Seller may choose which offer to accept and shall not be obligated for more than one
131 commission.
132
133 Seller's acceptance of an agreement to sell and purchase containing contingencies shall not entitle the
134 Broker to a commission unless or until the contingencies have been waived, released or satisfied, or unless
135 the Seller breaches the agreement to sell and purchase. Expiration of this Agreement while a transaction is
136 pending shall not relieve Seller of Seller's obligation to pay the stated commission upon closing. For
137 purposes of this document, the term "sale" shall be defined as including a lease or an exchange. The terms
138 buyer and seller shall include lessor/lessee and exchanger/exchangee including the plurals thereof, as
139 appropriate.
140
141 **PROTECTION PERIOD:** Within   180   days of the termination of this Agreement (hereinafter protection
142 period), if Seller enters into an agreement to or does sell, exchange, convey, lease, or rent the Property to
143 any party to whom Broker or any cooperating broker has marketed the Property, the commission shall be
144 payable at the time such agreement is entered into. However, Seller is not obligated to pay a commission to
145 Broker if, during the protection period, Seller has entered into a valid listing agreement covering the Property
146 with another licensed real estate broker that obligates Seller to pay that broker a commission upon the sale,
147 exchange, lease, or rental of the Property.
148
149 **GENERAL PROVISIONS:**
150
151     **MARKETING AUTHORIZATION:** Seller authorizes Broker to assemble or produce marketing
152     information as the Broker deems necessary and appropriate including interior and exterior
153     photographs, video, or similar materials. Seller further authorizes Broker to disseminate marketing
154     information and materials through whatever sources the Broker deems appropriate including, but not
155     limited to, multiple listing services, computer data bases, internet sites, magazines or other
156     publications. Seller authorizes Broker to accept the assistance and cooperation of other brokers. Seller
157     authorizes Broker to place a yard sign on the Property for use in connection with marketing the
158     Property pursuant to this listing. Seller authorizes Broker, Cooperating Broker, and accompanied
159     customers to enter any part of the Property at any reasonable time to show the same.

©Montana Association of REALTORS®, May 2008                         Standard Listing Page 3 of 5 _____
                                                                                              Seller's Initials
Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com   Moonlight basi

## RESIDENTIAL LISTING CONTRACT Exclusive Right to Sell

160  **LOCK BOX AUTHORIZATION:** Seller acknowledges that a lock box is designed as a repository of a
161  key, permitting access to the Property by Broker, Listing Firm, its brokers and salespersons, and by
162  participants of any Multiple Listing Service (MLS) with which Broker participates and the brokers and
163  salespersons of such participants. It is not a requirement of the MLS, Broker or the Listing Firm that
164  Seller allow the use of a lock box.
165  ☒ Seller does not allow the use of a lock box on the Property
166  ☐ Seller does allow the use of a lock box on the Property. By checking this box agreeing to the
167  use of a lock box on the Property and signing below, Seller authorizes Broker to use a lock box
168  on the Property and agrees to hold Broker, Listing Firm, Listing Firm's brokers and salespersons
169  and any participants of any MLS with which Broker participates harmless against any loss of
170  personal property located on the Property, provided no such person shall be held harmless from
171  his, her or its intentional acts. If the Property is occupied by tenants Seller agrees to obtain the
172  signed, written consent to the use of a lock box from any tenants residing in the Property.

174  **SAFEGUARDING OF SELLER'S PROPERTY:** Broker advises and requests the Seller to safeguard
175  or remove valuables located within the Property and to advise tenants, family members and other
176  occupants of the Property to do the same. Seller further acknowledges that Broker, Listing Firm, its
177  other brokers and salespersons, and participants of any MLS with which Broker participates and their
178  brokers and salespersons are not insurers against the loss of Seller's or any other's personal property
179  located within the Property. Seller is advised to either verify the existence of or obtain adequate
180  policies of personal property insurance.

182  **AUTHORIZATION FOR BROKER'S USE OF INFORMATION:** Seller authorizes Broker to disclose the
183  existence of offers on the Property to interested buyers and cooperating brokers, as permitted under
184  state law. Seller also authorizes Broker to disseminate sold data on the Property. Seller hereby
185  authorizes any lender, escrow agent, and utility company to disclose to Broker any documents held by
186  escrow agent, the current status on the terms of any loan, and the monthly bills relating to the Property.

188  **FORFEITED EARNEST MONEY:** Seller authorizes Broker to pay any expenses incurred in marketing
189  the Property from any forfeited earnest money and apportion any remaining earnest money between
190  Seller and Broker equally, provided that the amount paid to Broker shall not exceed the agreed
191  commission.

193  **ATTORNEY'S FEES:** In case either party engages an attorney's services in regard to this Agreement,
194  or in case of suit or action on this Agreement, the prevailing party shall recover costs, court costs, and
195  reasonable attorney's fees.

197  **CIVIL RIGHTS/FAIR HOUSING:** The Civil Rights and Fair Housing Laws of the United States and
198  Montana prohibit housing discrimination on the basis of race, religion, sex, national origin, color,
199  handicap, familial status, marital status, age and creed. All parties to this Agreement shall deal in a
200  free and open manner according to said law.

202  **FAX/COUNTERPARTS/ELECTRONIC SIGNATURES:** This Agreement may be executed in
203  counterparts and, when all counterpart documents are executed, the counterparts shall constitute a
204  single binding instrument. Moreover, a signature transmitted by fax or other electronic means will be
205  enforceable against any party, who executes the Agreement and transmits the signature by fax or
206  other electronic means. The parties hereto, all agree that the transaction contemplated by this
207  document may be conducted by electronic means in accordance with the Montana Uniform Electronic
208  Transaction Act.

210  SELLER CERTIFIES THAT SELLER HAS READ, UNDERSTOOD, AND RECEIVED A SIGNED COPY OF
211  THIS AGREEMENT, SELLER FURTHER CERTIFIES THAT IT HAS BEEN CALLED TO SELLER'S
212  ATTENTION AND SELLER UNDERSTANDS THAT IF SELLER CONVEYS SELLER'S INTEREST IN THE
213  PROPERTY DURING THE TERM OF THIS LISTING OR IF SELLER REVOKES THE UNDERSIGNED
214  BROKER'S EXCLUSIVE RIGHT TO SELL, SELLER WILL PAY THE ABOVE STATED COMMISSION.

©Montana Association of REALTORS®, May 2008    Standard Listing Page 4 of 5

Seller's Initials

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com    Moonlight basi

## RESIDENTIAL LISTING CONTRACT Exclusive Right to Sell

| Line | | | |
|---|---|---|---|
| 215 | Montana Real Estate, LLC | Moonlight Basin Ranch, LP | |
| 216 | Listing Firm | Seller's Name | |
| 217 | | | |
| 218 | | | |
| 219 | Signature of Broker  Date | Signature of Seller  2/5/09 Date | |
| 220 | Leesa Poole Anderson | | |
| 221 | | | |
| 222 | Signature of Listing Salesperson  Date | Signature of Seller  Date | |
| 222 | Leesa Poole Anderson | | |
| 223 | | | |
| 224 | (406) 995-3707 | PO Box 1369 | |
| 225 | Phone Number | Seller's Address | |
| 226 | | | |
| 227 | | Ennis, MT 59729 | |
| 228 | | Seller's City, State and Zip Code | |
| 229 | | | |
| 230 | | (406) 682-6666 | |
| 231 | | Seller's Phone Number | |

**NOTE:** Unless otherwise expressly stated the term "Days" means calendar days and not business days. Business days are defined as all days except Sundays and holidays. Any performance which is required to be completed on a Saturday, Sunday or a holiday can be performed on the next business day

©Montana Association of REALTORS®, May 2008

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com  Moonlight basi

## RESIDENTIAL LISTING CONTRACT Exclusive Right to Sell

| | |
|---|---|
| 215 Montana Real Estate Co., LLC | Moonlight Basin Ranch, LP |
| 216 Listing Firm | Seller's Name |
| 219 Signature of Broker  CO-LiSTing  Date | Signature of Seller  Date |
| 220 Tim Anderson  AGent | |
| 222 Signature of Listing Salesperson  Date | Signature of Seller  Date |
| 222 Leesa Poole Anderson  Broker | |
| 224 (406) 995-3992 | PO Box 1369 |
| 225 Phone Number | Seller's Address |
| 227 | Ennis, MT 59729 |
| 228 | Seller's City, State and Zip Code |
| 230 | (406) 682-6666 |
| 231 | Seller's Phone Number |

**NOTE:** Unless otherwise expressly stated the term "Days" means calendar days and not business days. Business days are defined as all days except Sundays and holidays. Any performance which is required to be completed on a Saturday, Sunday or a holiday can be performed on the next business day

©Montana Association of REALTORS®, May 2008

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com   Moonlight basi

# ADDENDUM TO LISTING AGREEMENT
# FOR ADDITIONAL PROVISIONS



1  This is an addendum to a Listing Agreement dated _____ January 1, 2009 _____,
2
3  between Moonlight Basin Ranch, LP
4
5  (Seller) and Montana Real Estate, LLC
6
7  (Broker) and concerning the following described property: *see Addendum, Big Sky, MT 59716
8
9
10 Additional provisions: 1. Cowboy Heaven Luxury Suite Building 3 Suite A -
11 $1,595,000.00
12 2. Alpine Meadows Chalet #74 - $1,795,000.00
13 3. Alpine Meadows Luxury Suite Building 6 Suite A - $1,695,000.00; Suite B
14 $2,195,000.00; Suite C $1,995,000.00 and Suite D $1,995,000.00.
15 4. Strawberry Ridge - Lot 1 $1,995,000.00; Lot 2 $1,695,000.00; Lot 3
16 $1,595,000.00 and Lot 4 $1,395,000.00.
17 5. 160 Acre Reserve Ranches - ~~TBD~~ See attached price list.
18
19
20
21
22
23
24
25
26
27

28 Montana Real Estate, LLC
29
30 Broker                              Date        Seller Moonlight Basin Ranch, LP    3/5/09  Date
31
32
33
34 Listing Salesperson                 Date        Seller                              Date
35 Leesa Poole Anderson

**NOTE:** Unless otherwise expressly stated the term "Days" means calendar days and not business days. Business days are defined as all days as except Sundays and holidays. Any performance which is required to be completed on a Saturday, Sunday or a holiday can be performed on the next business day.

©MONTANA ASSOCIATION OF REALTORS®, March 2006

MONTANA REAL ESTATE COMPANY PO BOX 161110, BIG SKY, MT 59716
Phone: (406) 995 - 3992    Fax: (406) 995 - 3244    Leesa P. Anderson                            Moonlight basi
Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com

MONTANA REAL ESTATE CO.

## MOONLIGHT BASIN RESERVE RANCHES

| LOT | NAME | PRICE |
|---|---|---|
| Three | Three Peaks | $ 7.25 M |
| Four | Elk Knob | $ 7.25 M |
| Five | Royal Tine | $ 6.5 M |
| Six | Six Pointe | $ 6.5 M |
| Seven | Sound of Music | $ 8.0 M |
| Eight | Jack Creek Meadows | $ 8.0 M |
| Nine | Moose Hollow | $ 8.0 M |
| Ten | Four Meadows | $ 8.0 M |
| Eleven | Grande Aspen | $ 8.5 M |
| Twelve | The Slides | $ 6.75 M |
| Thirteen | River of Trees | SOLD |
| Fourteen | Twin Creeks | $ 6.75 M |
| Fifteen | 360 Ridge | SOLD |
| Sixteen | Peterson's Camp | $ 8.0 M |
| Seventeen | Roaring Gulch | $ 5.5 M |
| Eighteen | Wickiup Creek Basin | $ 6.5 M |
| Nineteen | Block Buster | $ 8.0 M |
| Twenty | Rolling Ridge | $ 6.5 M |
| Twenty One | Vantage Pointe | $ 6.0 M |

Moonlight Basin reserves the right to add, combine, remove or develop any property on this list without notice. Prices will change routinely. Please contact your Montana Real Estate Co. Associate to verify current pricing.

*[signature]*
Seller Initials

An exclusive offering by Montana Real Estate Company
updated July 30, 2007

## RELATIONSHIPS/CONSENTS IN REAL ESTATE TRANSACTIONS
## (COMBINED EXPLANATION AND DISCLOSURE)
Definition of Terms and Description of Duties



1  A "Seller Agent" is obligated to the Seller to:
2   • act solely in the best interests of the seller, except that a seller agent, after written disclosure to the seller and
3   with the seller's written consent, may represent multiple sellers of property or list properties for sale that may
4   compete with the seller's property without breaching any obligation to the seller;
5   • obey promptly and efficiently all lawful instructions of the seller;
6   • disclose all relevant and material information that concerns the real estate transaction and that is known to
7   the seller agent and not known or discoverable by the seller unless the information is subject to confidentiality
8   arising from a prior or existing agency relationship on the part of the seller agent with a buyer or another seller;
9   • safeguard the seller's confidences;
10  • exercise reasonable care, skill, and diligence in pursuing the seller's objectives and in complying with the
11  terms established in the listing agreement;
12  • fully account to the seller for any funds or property of the seller that comes into the seller agent's
13  possession; and
14  • comply with all applicable federal and state laws, rules, and regulations.
15
16 A "Seller Agent" is obligated to the Buyer to:
17  • disclose to a buyer or the buyer agent any adverse material facts that concern the property and that are
18  known to the seller agent, except that the seller agent is not required to inspect the property or verify any
19  statements made by the seller;
20  • disclose to a buyer or the buyer agent when the seller agent has no personal knowledge of the veracity of
21  information regarding adverse material facts that concern the property;
22  • act in good faith with a buyer and a buyer agent; and
23  • comply with all applicable federal and state laws, rules, and regulations.
24
25 A "Buyer Agent" is obligated to the Buyer to:
26  • act solely in the best interests of the buyer, except that a buyer agent, after written disclosure to the buyer and
27  with the buyer's written consent, may represent multiple buyers interested in buying the same property or similar
28  properties to the property in which the buyer is interested or show properties in which the buyer is interested to
29  other prospective buyers without breaching any obligation to the buyer;
30  • obey promptly and efficiently all lawful instructions of the buyer;
31  • disclose all relevant and material information that concerns the real estate transaction and that is known to
32  the buyer agent and not known or discoverable by the buyer, unless the information is subject to confidentiality
33  arising from a prior existing agency relationship on the part of the buyer agent with another buyer or seller;
34  • safeguard the buyer's confidences;
35  • exercise reasonable care, skill, and diligence in pursuing the buyer's objectives and in complying with the
36  terms established in the Buyer/Broker agreement;
37  • fully account to the buyer for any funds or property of the buyer that comes into the buyer agent's
38  possession; and
39  • comply with all applicable federal and state laws, rules and regulations.
40
41 A "Buyer Agent" is obligated to the Seller to:
42  • disclose any adverse material facts that are known to the buyer agent and that concern the ability of the
43  buyer to perform on any purchase offer;
44  • disclose to the seller or the seller agent when the buyer agent has no personal knowledge of the veracity of
45  information regarding adverse material facts that concern the buyer;
46  • act in good faith with a seller and a seller agent; and
47  • comply with all applicable federal and state laws, rules and regulations.
48
49 **DUAL AGENCY** IF A SELLER AGENT IS ALSO REPRESENTING A BUYER, OR A BUYER AGENT IS ALSO
50 REPRESENTING A SELLER WITH REGARD TO A PROPERTY, THEN A DUAL AGENCY RELATIONSHIP MAY
51 BE ESTABLISHED. IN A DUAL AGENCY RELATIONSHIP, THE DUAL AGENT IS EQUALLY OBLIGATED TO BOTH
52 THE SELLER AND THE BUYER. THESE OBLIGATIONS MAY PROHIBIT THE DUAL AGENT FROM ADVOCATING
53 EXCLUSIVELY ON BEHALF OF THE SELLER OR BUYER AND MAY LIMIT THE DEPTH AND DEGREE OF
54 REPRESENTATION THAT YOU RECEIVE. A BROKER OR A SALESPERSON MAY NOT ACT AS A DUAL AGENT
55 WITHOUT THE SIGNED, WRITTEN CONSENT OF BOTH THE SELLER AND THE BUYER.
56
57                                                                                    Initial ____

58 A "**Dual Agent**" is obligated to a Seller in the same manner as a seller agent and is obligated to a buyer in the
59 same manner as a buyer agent, except that a dual agent:
60     • has a duty to disclose to a buyer or seller any adverse material facts that are known to the dual agent
61     regardless of any confidentiality considerations; and
62     • may not disclose the following information without the written consent of the person whom the information
63     is confidential;
64         (i) the fact that the buyer is willing to pay more than the offered purchase price;
65         (ii) the fact that the seller is willing to accept less than the purchase price that the seller is asking
66         for the property;
67         (iii) factors motivating either party to buy or sell; and
68         (iv) any information that a party indicates in writing to the dual agent is to be kept confidential.
69
70 A "**Statutory Broker**" is not the agent of the Buyer or Seller but nevertheless is obligated to them to:
71     • disclose to:
72         (i) a buyer or a buyer agent any adverse material facts that concern the property and that are
73         known to the statutory broker, except that the statutory broker is not required to inspect the
74         property or verify any statements made by the seller; and
75         (ii) a seller or a seller agent any adverse material facts that are known to the statutory broker and
76         that concern the ability of the buyer to perform on any purchase offer;
77     • exercise reasonable care, skill, and diligence in putting together a real estate transaction, and
78     • comply with all applicable federal and state laws, rules and regulations.
79
80 An "**Adverse material fact**" means a fact that should be recognized by a broker or salesperson as being of
81 enough significance as to affect a person's decision to enter into a contract to buy or sell real property and may be
82 a fact that:
83     (i) materially affects the value, affects structural integrity, or presents a documented health risk to
84     occupants of the property; and
85     (ii) materially affects the buyer's ability or intent to perform the buyer's obligations under a proposed or
86     existing contract.
87 "Adverse material fact" does not include the fact that an occupant of the property has or has had a communicable
88 disease or that the property was the site of a suicide or felony.
89
90 **Disclosures/Consents**
91 The undersigned Broker or Salesperson hereby discloses the relationship(s) as checked below, and the undersigned
92 Seller or Buyer acknowledges receipt of such disclosure(s) and consents to the relationship(s) disclosed.
93
94 **Check all the Applicable Relationship(s):**
95
96 ☒ Seller Agent                                     ☐ Buyer Agent
97     ☒ By checking this box, the undersigned consents     ☐ By checking this box, the undersigned consents
98     to the licensee representing multiple sellers.             to the licensee representing multiple buyers.
99
100 ☐ Statutory Broker                                ☒ Dual Agent (by checking this box, the undersigned
101                                                     consents to the licensee acting as a dual representative.)
102
103
104
105 Leesa Poole Anderson                [signature]
106 Broker and/or Salesperson                                                Date
107
108                                                                                      2/5/09
109
110 ☒ Seller ☐ Buyer Moonlight Basin Ranch, LP                                         Date

**NOTE:** Unless otherwise expressly stated the term "Days" means calendar days and not business days. Business days are defined as all days as except Sundays and holidays. Any performance which is required to be completed on a Saturday, Sunday or a holiday can be performed on the next business day.

# MOLD DISCLOSURE



*see Addendum
1 Property Address: Big Sky, MT   59716
2
3 MOLD DISCLOSURE: There are many types of mold. Inhabitable properties are not, and cannot be,
4 constructed to exclude mold. Moisture is one of the most significant factors contributing to mold growth.
5 Information about controlling mold growth may be available from your county extension agent or health
6 department. Certain strains of mold may cause damage to property and may adversely affect the health of
7 susceptible persons, including allergic reactions that may include skin, eye, nose, and throat irritation. Certain
8 strains of mold may cause infections, particularly in individuals with suppressed immune systems. Some
9 experts contend that certain strains of mold may cause serious and even life-threatening diseases. However,
10 experts do not agree about the nature and extent of the health problems caused by mold or about the level of
11 mold exposure that may cause health problems. The Centers for Disease Control and Prevention is studying
12 the link between mold and serious health conditions. The seller, landlord, seller's agent, buyer's agent, or
13 property manager cannot and does not represent or warrant the absence of mold. It is the buyer's or tenant's
14 obligation to determine whether a mold problem is present. To do so, the buyer or tenant should hire a
15 qualified inspector and make any contract to purchase, rent, or lease contingent upon the results of that
16 inspection. A seller, landlord, seller's agent, buyer's agent, or property manager who provides this mold
17 disclosure statement, provides for the disclosure of any prior testing and any subsequent mitigation or
18 treatment for mold, and discloses any knowledge of mold is not liable in any action based on the presence of
19 or propensity for mold in a building that is subject to any contract to purchase, rent, or lease.

20 The undersigned, Seller, Landlord, Seller's Agent and/or Property Manager disclose that they have knowledge
21 that the building or buildings on the property have mold present in them. This disclosure is made in recognition
22 that all inhabitable properties contain mold, as defined by the Montana Mold Disclosure Act (any mold, fungus,
23 mildew or spores). The undersigned are not representing that a significant mold problem exists or does not
24 exist on the property, as such a determination may only be made by a qualified inspector.

25 If Seller/Landlord knows a building located on the property has been tested for mold, Seller/Landlord has
26 previously provided or with this Disclosure provides the Buyer/Tenant a copy of the results of that test (if
27 available) and evidence of any subsequent mitigation or treatment.

28 ___[signature]___          2/5/09          ___[signature]___
29 Seller/Landlord             Date            Seller's Agent/Property Manager       Date
30 Moonlight Basin Ranch, LP                  Leesa Poole Anderson

31
32 Seller/Landlord             Date            Seller's Agent/Property Manager       Date
33

34 ACKNOWLEDGMENT: The undersigned Buyer/Tenant, Buyer's Agent or Statutory Broker acknowledge
35 receipt of this Disclosure, the test results (if available) and evidence of subsequent mitigation or treatment.
36 The undersigned Buyer/Tenant agrees that it is their responsibility to hire a qualified inspector to determine if a
37 significant mold problem exists or does not exist on the property. They further acknowledge that the Seller,
38 Landlord, Seller's Agent, Buyer's Agent, Statutory Broker and/or Property Manager, who have provided this
39 Disclosure, are not liable for any action based on the presence of or propensity for mold in the property.

40
41 Buyer/Tenant               Date            Buyer's Agent/Statutory Broker        Date
42

43
44 Buyer/Tenant               Date            Buyer's Agent/Statutory Broker        Date
43

NOTE: Unless otherwise expressly stated the term "Days" means calendar days and not business days. Business days are defined as all days as except Sundays and holidays. Any performance which is required to be completed on a Saturday, Sunday or a holiday can be performed on the next business day.

Mold Disclosure          ©MONTANA ASSOCIATION OF REALTORS®, March 2006
MONTANA REAL ESTATE COMPANY PO BOX 161110, BIG SKY, MT 59716
Phone: (406) 995 - 3992    Fax: (406) 995 - 3244    Leesa P. Anderson                      Moonlight basi
Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.ziplorm.com