UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**MOONLIGHT BASIN RANCH LP**,<br><br>Debtor. | Case No. **09-62327-11** |

**O R D E R**

At Butte in said District this 30th day of November, 2009.

In this Chapter 11 bankruptcy, upon shortened notice, a hearing was held November 24, 2009, in Butte on Debtor's "Motion pursuant to Bankruptcy Code §§ 105, 361, 362, 363 and 364, and Bankruptcy Rules 2002, 4001, and 9014 for interim and final orders (1) authorizing debtors to obtain post-petition financing, (2) authorizing debtors to utilize cash collateral, (3) granting adequate protection to pre-petition secured lenders, and (4) scheduling interim and final hearings" ("Motion") filed November 18, 2009, at docket entry nos. 9, 10, 11 and 12.  The Debtors were represented at the hearing by James A. Patten of Billings, Montana and Stanley T. Kaleczyc of Helena, Montana.  In addition, Doug James of Billings, Montana appeared at the hearing on behalf of Lehman Commercial Paper, Inc.; Michael J. Lilly of Bozeman, Montana appeared on behalf of Lee Poole, Tim William Anderson, Six Shooter, LLC, JVLP, LLC and Aardvark, LLC; Daniel P. McKay of Great Falls, Montana appeared on behalf of the United States Trustee; and Jennifer Rodburg of New York, New York appeared on behalf of Trilogy Capital.  Russ McElyea and Geritt Cormany testified, and Exhibit 2 was admitted into evidence without objection.

Created by Neevia Document Converter trial version http://www.neevia.com

Moonlight Basin Ranch, LP is a limited partnership that owns 100% of the equity interests of Moonlight Lodge, LLC, Lone Mountain Food & Beverage, LLC, Moonlight Golf, LLC, Moonlight Spa, LLC, and Moonlight Basin, LLC, each of which are limited liability companies. Each of the aforementioned entities sought protection under Chapter 11 of the Bankruptcy Code on November 18, 2009. The Debtor and its affiliate Debtors maintain their primary place of business at Big Sky, Madison County, Montana; together the Debtor, affiliate Debtors and non-debtor affiliates comprise Moonlight Basin Resort. Moonlight Basin Resort is a ski and golf community located in Big Sky, Montana, approximately 50 miles from Bozeman, Montana. Moonlight Basin Resort is situated on more than 8,000 acres of land adjacent to the Big Sky Ski Resort.

On September 7, 2007, the Debtor and affiliate Debtors and some other non-debtor affiliates entered into a Senior Secured Term Loan Facility dated September 7, 2007 (the "senior Secured Loan") with Lehman Brothers Commercial Bank and Lehman Brothers, Inc. The rights of Lehman Brothers Commercial Bank and Lehman Brothers, Inc. have been assigned to Lehman Commercial Paper, Inc. As of the petition date, Moonlight Basin Ranch LP was indebted to Lehman Commercial Paper, Inc. under the Senior Secured Loan in the approximate amount of $92,962,164. The affiliate Debtors and some of the non-debtor affiliates have guaranteed this debt and have granted liens upon their property, all as described in the Senior Secured Loan.

Lehman Commercial Paper, Inc. maintains that the Senior Secured Loan has been in default since 2008. Consistent therewith, Lehman Commercial Paper, Inc. filed an action seeking to foreclose the mortgage and security interests in the Montana Fifth Judicial District Court, Madison County, *Lehman Commercial Paper v. Moonlight Basin Ranch LP, et al*, DV 20-

Created by Neevia Document Converter trial version http://www.neevia.com

2009-83.

On November 18, 2009, just four minutes prior to the Debtor filing its Chapter 11 bankruptcy petition, Lehman Commercial Paper, Inc. wire transferred in excess of $150,000.00 to the Debtors to insure that the Debtors would have adequate funds to meet their November payroll. In addition, Lehman Commercial Paper, Inc. has consented to Debtor's sale of a condominium for $1.4 million and for the Debtors' use of $1.4 million of Cash Collateral Sales Proceeds to fund Debtors' continuing operations. Pursuant to the evidence at the hearing, the sale of the condominium is scheduled to close on November 30, 2009. Lehman Commercial Paper, Inc. has also agreed to loan the Debtor an additional $1.5 million to keep the Moonlight Basin Resort operating.

Geritt Cormany ("Cormany"), Debtor's Chief Financial Officer, testified that the Debtors could adequately continue their operations through next week, including their December 4, 2009, payroll with the money that was in the Debtor's, and its debtor affiliates' accounts on November 18, 2009-- which amounts include the Lehman Commercial Paper, Inc. wire transfer--if the Debtors could use such funds. By separate order already entered by this Court, the Debtor and its debtor affiliates have been authorized to use the money that was in the bank accounts on November 18, 2009, for any expenses incurred in the ordinary course of business.

Cormany also testified that if the sale of Debtor's condominium to Ron and Dana MacMillan closes on November 30, 2009, or shortly thereafter, and if Debtor could secure use of the sales proceeds, that the Debtor and its debtor affiliates would have sufficient funds to open for the ski season. The ski season at Moonlight Basin Resort is scheduled to open on December 11, 2009. Lehman Commercial Paper, Inc. has consented and the Court has entered an Order

Created by Neevia Document Converter trial version http://www.neevia.com

allowing Debtor to use the sales proceeds from the sale of the condominium. Debtor's only concern is that for reasons not now known, the sale may not close as scheduled on November 30, 2009.

Notwithstanding the foregoing, Debtor seeks in its pending Motion to secure the following debtor-in-possession financing from Trilogy Capital:

> [A] superpriority postpetition term loan financing facility pursuant to the DIP Facility in an aggregate principle amount not to exceed $21,000,000 (with up to $2,000,000 of the DIP Facility to be advanced (the "Interim Advance") to the Debtors on an interim basis from the date hereof through and including the date of entry of the Final Order) on and subject to the terms and conditions set forth on the Term Sheet attached as Exhibit A hereto, and for each of the Subsidiary Debtors (the "DIP Guarantors") to guaranty the Debtor's obligations in connection with the DIP Facility:
> 
> (I) having super administrative expense priority, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all claims in the Debtors' Cases including, without limitation, any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Professional Carve-Out (as described below);
> 
> (ii) being secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by valid, enforceable, perfected and non-avoidable first priority security interests in and liens, not subject to subordination, upon all unencumbered prepetition and postpetition property of the Debtors, whether owned on the Closing Date (as defined in the Term Sheet) or thereafter acquired, including, but not limited to, real property, Cash Collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, property, plants, equipment, general intangibles, instruments, interests in leaseholds, patents, copyrights, trademarks, trade names, other intellectual property and the proceeds of all the foregoing, but excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (collectively, the "Avoidance Actions") (the "Collateral")
> 
> (iii) being secured, pursuant to Section 364(d)(1) of the Bankruptcy Code, by perfected first priority senior priming security interests in, liens on and mortgage liens on the Collateral, (including, specifically, any liens securing obligations relating to the Senior Secured Loan (as defined below) with Lehman Commercial Paper Inc. ("LCIP") and the construction liens), except for purchase money security interests on any of the Collateral having a valid, perfected and unavoidable existing lien (the "Permitted Prepetition Third Party Liens"); and all existing liens, rights and interests on the Collateral granted to or

Created by Neevia Document Converter trial version http://www.neevia.com

for the benefit of the LCPI under the Senior Secured Loan and other related documents and the construction liens (collectively, the "Primed Liens") shall be primed and made subject to and subordinate to the perfected first priority senior liens to be granted to the DIP Lender; the DIP Facility shall also prime any liens granted after the commencement of the Cases to provide adequate protection in respect of any of the Primed Liens, and

(iv) being secured, pursuant to section 364(c)(3) of the Bankruptcy Code, by perfected second priority security interests in and liens, not subject to subordination, upon all Collateral that is subject to the Permitted Prepetition Third Party Liens (the "Second Priority DIP Liens");

The proposed debtor-in-possession financing from Trilogy Capital provides for an interest rate of 15% and is subject to origination fees, exit fees and break up fees. In response to the Trilogy Capital's proposed debtor-in-possession financing, Lehman Commercial Paper, Inc. proposes debtor-in-possession financing at 5% interest, with none of the fees referenced above.

Debtor countered Lehman Commercial Paper, Inc.'s proposed debtor-in-possession financing offer by arguing that Debtor has affirmative defenses against Lehman Commercial Paper, Inc.'s foreclosure efforts. Lehman Commercial Paper, Inc.'s proposed debtor-in-possession financing precludes Debtor from using any of the debtor-in-possession financing to fund litigation against Lehman Commercial Paper, Inc. With the Trilogy Capital debtor-in-possession financing, the Debtor could use some of the financing to pursue its claims against Lehman Commercial Paper, Inc. The Court would note that Debtor did not offer any evidence to support its claims against Lehman Commercial Paper, Inc. and in fact, the testimony at the hearing was that the Debtor signed release of claim agreements with respect to the Senior Secured Loan.

Given Debtor's failure at this early stage in the bankruptcy to produce any evidence, other than naked assertions, that is has valid defenses against Lehman Commercial Paper, Inc.'s

Created by Neevia Document Converter trial version http://www.neevia.com

Senior Secured Loan, and given the testimony that Debtor can meet its obligations, at least through the week of November 30th, with the funds it currently has in its bank accounts, the Court finds that Debtor has failed to show immediate and irreparable harm that would justify this Court shortening the notice period referenced in Rule 4001(c).

Moreover, if the sale of the condominium proceeds as planned, Debtor will have ample funds to get it to a final hearing that is at least 15 days past November 18, 2009. In the event the sale does not close as anticipated, Lehman Commercial Paper, Inc. has agreed to work with the Debtor to provide additional interim financing on an emergency basis until a final hearing can be held on December 7, 2009.

After the Court stated its ruling with respect to the Rule 4001(c) issue, Debtor urged the Court to nevertheless allow Trilogy Capital a priming lien of up to $300,000 so Trilogy Capital could begin its due diligence investigation of the Debtor. Counsel for Debtor argued that Debtors simply cannot wait another two weeks for Trilogy Capital to begin its due diligence. Although the Court understands Debtor's concerns, this Court cannot, on shortened notice, approve a priming lien when Trilogy Capital may not be the vehicle selected to provide final debtor-in-possession financing. Moreover, at this early stage, the Debtor's scarce capital resources should be used to fund operations. However, if the debtor-in-possession financing proposed by Trilogy Capital is selected at the final hearing as the financing vehicle, this Court will approve Trilogy Capital's due diligence expenses upon proper application to this Court.

In accordance with the foregoing and in accordance with the Court's oral ruling made in open court on November 24, 2009,

IT IS ORDERED:

Created by Neevia Document Converter trial version http://www.neevia.com

1. Debtor's Motion to schedule interim and final hearings filed November 18, 2009, at docket entry no. 12 is GRANTED;

2. Debtor's Motion pursuant to Bankruptcy Code §§ 105, 361, 362, 363 and 364, and Bankruptcy Rules 2002, 4001, and 9014 for interim and final orders is DENIED in part, in that the Court will not issue any interim order allowing debtor-in-possession financing with Trilogy Capital absent a hearing held at least 15 days after the motion at docket entry nos. 9, 10, and 11 was filed; and

3. A final hearing on Debtor's Motion pursuant to Bankruptcy Code §§ 105, 361, 362, 363 and 364, and Bankruptcy Rules 2002, 4001, and 9014 for . . . a final order (1) authorizing debtors to obtain post-petition financing, (2) authorizing debtors to utilize cash collateral, [and] (3) granting adequate protection to pre-petition secured lenders, filed at docket entry nos. 9, 10, and 11 shall be held **Monday, December 7, 2009, at 09:00 a.m.** in the 2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

Created by Neevia Document Converter trial version http://www.neevia.com